## CENTRAL HANOVER BANK & TRUST CO. v. HERBST.

### No. 138.

Circuit Court of Appeals, Second Circuit.
Dec. 6, 1937.

Henry H. Salzburg, of New York City (Benjamin Beskin, of New York City, on the brief), for appellant.

Jones, Clark & Higson, of New York City (Samuel R. Feller, of New York City, Leo. H. Hirsch, Jr., of New York City, of counsel), for appellee.

Before L. HAND and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from an order of the bankruptcy court, vacating a stay which the bankrupt had procured enjoining the prosecution of proceedings against him in

a state court. The facts are as follows. Herbst, the bankrupt, by profession a dentist, had been appointed receiver of a parcel of real property in a suit of foreclosure in the Supreme Court of New York. He received allowances of $42,000, and when the property was sold, presented his intermediate account for settlement, which the court passed and allowed him $5,674.54 in addition to what he had already had. Without waiting for the time to appeal from this order to expire, or consulting the plaintiff in foreclosure as to whether it intended to appeal, he withdrew this money and has spent it. The plaintiff appealed to the Appellate Division (Central Hanover B. & T. Co. v. Williams, 244 App.Div. 566, 280 N.Y. S. 314) from the order passing the intermediate account, which that court modified by denying the added allowance; judgment was entered against Herbst for that amount of which he has paid only a part. Upon final settlement of his account a new judgment was entered against him for the unpaid balance, which the Court of Appeals of New York on June 1, 1937, decided that his surety must pay. Central Hanover B. & T. Co. v. National Surety Corp., 274 N.Y. 579, 10 N.E.2d 560. The surety at once moved ineffectively to punish him for contempt, and on August 13, 1937, filed a creditors' bill against him ("proceedings supplementary to execution"). Thereupon on the 16th he was adjudicated a voluntary bankrupt and procured the stay which has been vacated by the order appealed from. The only questions raised are whether the claim is dischargeable under section 17 (a) (4) of the Bankruptcy Act (11 U.S.C.A. § 35 (4); that is, whether it was created by the bankrupt's "fraud, embezzlement misappropriation, or defalcation while acting as an officer or in any fiduciary capacity"; and whether, having been discharged, he was acting "in any fiduciary capacity," when he took the money.

◼ Arguendo we shall assume that Herbst's withdrawal of the money was neither a "fraud," "embezzlement," nor "misappropriation," for we think that in any event it was a "defalcation." Under the Act of 1800, 2 Stat. 19, 30 (section 34), a discharge relieved bankrupts of all their debts without exception, provided they conducted themselves properly; but the statute applied only to those engaged in commerce and was confined to involuntary bankruptcies. Under section 4 of the Act of 1841 (5 Stat. 443) a discharge also relieved bankrupts of all their debts, but for the first time and after much dissension voluntary bankruptcy was provided for. The word, "defalcation," first appears in section 1 of that act (5 Stat. 440) and only as part of the definition of those who might become voluntary bankrupts; they were those who did not owe debts "created in consequence of a defalcation as a public officer; or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity." Colloquially perhaps the word, "defalcation," ordinarily implies some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts. It must be remembered that the "fiduciary capacity" was limited to "special" or "technical" fiduciaries. Chapman v. Forsyth, 2 How. 202, 208, 11 L.Ed. 236. Section 11 of the Act of 1867 (14 Stat. 521) removed the former limitations of the Act of 1841 upon voluntary bankruptcies, and involuntary petitions were not longer confined to those engaged in commerce (section 39, 14 Stat. 536). However, for the first time not all debts were discharged, the exceptions appearing in section 33, 14 Stat. 533, which incorporated the old clause of section 1, compressed into the words, "defalcation as a public officer, or while acting in any fiduciary character," before which it interpolated the phrase, "the fraud or embezzlement of the bankrupt." Whatever was the original meaning of "defalcation," it must here have covered other defaults than deliberate malversations, else it added nothing to the words, "fraud or embezzlement." We do not understand that the Supreme Court questioned this in Crawford v. Burke, 195 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147, where it held that the suffix "as a public officer" etc., which had limited only "defalcation" in the Act of 1867, applied to the whole of subdivision 4 of the Act of 1898. The successful argument there was that otherwise part of subdivision two would have been covered by "fraud" in subdivision four, and that reasoning became even more persuasive after 1903, when subdivision two was no longer limited to "judgments," but included all "liabilities" for getting money or property by fraud.

It does not seem to us, however, that this linkage of "fraud" and "embezzlement" to "defalcation" need change its meaning in the Act of 1867. It is true that "embezzlement" certainly, and perhaps "fraud" too, become redundant when the suffix is at-

512

tributed to them; Crawford v. Burke, supra, 195 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147, avoided that vice as between the two subdivisions at the expense of creating it within subdivision four itself. But that is no reason for going still further and reducing "embezzlement" and "defalcation" to synonyms, especially after the interpolation of "misappropriation" between them, which, though indeed a baffling word at best in this context, may have been put in to avoid traditional limitations clinging to the word, "embezzlement."

We must give the words different meanings so far as we can, especially when a contrary interpretation would wrest "defalcation," if not from its original meaning, at least from that which it must have had in the Act of 1867. The authorities are not indeed very satisfactory, but so far as they go, they uniformly accord with this view, and indeed go farther. City of Syracuse v. Roscoe, 66 Misc. 317, 123 N.Y.S. 403; National Surety Co. v. Wittich, 185 Minn. 321, 240 N.W. 888; England Loan Co. v. Campbell, 183 Ark. 49, 35 S.W.2d 75, 1006; Orndorff v. State ex rel. McGill (Tex.Civ.App.) 108 S.W.2d 206.

In the case at bar the bankrupt had not been entirely innocent—not, for instance like the victim of an employee—though possibly one may acquit him of deliberate wrongdoing. A judge had awarded him the money, and prima facie he was entitled to it; but he knew, or if he did not know, he was charged with notice (having held himself out as competent to be an officer of the court), that the order would not protect him if it were reversed; and that it might be reversed until the time to appeal had expired. He made no effort to learn from the plaintiff whether it meant to appeal, and he did not wait until it could no longer do, so; he took his chances. We do not hold that no possible deficiency in a fiduciary's accounts is dischargeable; in Re Bernard, 87 F.2d 705, 707, we said that "the misappropriation must be due to a known breach of the duty, and not to mere negligence or mistake." Although that word probably carries a larger implication of misconduct than "defalcation," "defalcation" may demand some portion of misconduct; we will assume arguendo that it does.

All we decide is that when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time that it may, he is guilty of a "defalcation" though it may not be a "fraud," or an "embezzlement," or perhaps not even a "misappropriation."

The second point need not detain us; it is that when Herbst took the money he had already been discharged as receiver, and that his "defalcation," if there was any, was not therefore "in a fiduciary capacity." This curious play on words ignores the fact that the order discharging him as receiver, was conditional upon its surviving an appeal. The appellate court always had power to reinstate him as its officer for the purpose of disciplining him in any appropriate way; he was therefore really never finally discharged at all.

Order affirmed.