In re Donald Leroy BEASLEY and
Yvonne R. Beasley, Debtors.

Bankruptcy No. 83–02144–S–2.

United States Bankruptcy Court,
W.D. Missouri, S.D.

July 10, 1986.

Harold F. Glass, Springfield, Mo., for
plaintiff.

James R. Doran, Springfield, Mo., for
debtors/defendants.

## MEMORANDUM OPINION
## AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

This adversary proceeding comes before the Court upon the complaint of Ozark Production Credit Association (movant) objecting to discharge of a portion of the debt owed by debtors to movant. The facts reveal that debtors filed their Chapter 11 petition in August of 1983. The proceedings were converted to Chapter 7 on June 12, 1985. Movant was granted an extension by the Honorable Joel Pelofsky to file this complaint but Judge Pelofsky resigned December 31, 1986, before hearing the matter.

At the hearing, movant introduced the latest security agreement dated in December of 1982, along with the three notes for which it was security and the three financing statements which movant had filed to perfect its security agreement. Movant then introduced evidence to show that in 1983 debtors sold $3,900.00 of the secured crops, deposited the funds in the Charter Bank of Lockwood, and failed to account for the proceeds to the movant. The testimony of movant's witness, even on cross examination, did not indicate that any authorization to sell without accounting had ever been the practice or policy of movant.

Debtors seemed to have two thrusts to their defense. First, they contested whether movant had a perfected security interest in the crops. Second, they believed they had a right to use the crops under a cash collateral theory. In inverse order, the Court went back through the file and examined the notes from the March 1984 hearing. Those notes do not indicate to this Court that debtors were ever given permission to sell crops on which movant had a lien.

■ Moving to the first point, Section 400.9–204 Mo.R.S. provides that to have a perfected lien on crops, the creditor must procure a new or current security agreement on an annual basis. That section does not require the filing of a new financing statement. Thus one properly filed financing statement could theoretically perfect the creditor's lien in crops for five years, provided only that the debtor executed a new security agreement each year. In view of this the Court finds that movant had a duly perfected security interest in the crops planted within twelve months of the December 1982 security agreement.

The evidence presented showed that at least $3,900.00 of said crops were subsequently sold by debtors and the funds deposited in the Charter Bank of Lockwood. That said funds were subsequently expended by debtors is not disputed and debtors offered no explanation as to what said funds were used for.

■ This leads the Court to the most difficult point, namely is the unexplained sale of secured assets by a debtor sufficient grounds to declare nondischargeability as to said sums realized by a debtor from the sale. Creditor clearly tries to cast its complaint under § 523(a)(4):

> "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny".

Some courts have held that unauthorized use of cash collateral by a Chapter 11 debtor is prima facie evidence that the debtor has breached a fiduciary duty in the context of a § 523(a)(4) complaint for nondischargeability. E.g. *In re Alvey*, 56 B.R. 170 (BR WD Ky.1985). However, the Eighth Circuit has held (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 that the section does not reach constructive trustees and applies only to express trusts. See *In re Long*, 774 F.2d 875, (8th Cir.1985). Clearly then, movant cannot prevail because the express trust is required and not present here.

■ Nevertheless the fiduciary connection is not required under § 523(a)(4) for creditors to challenge debtor's discharge on grounds of embezzlement or larceny. See *In re Graziano*, 35 B.R. 589, (Bkrtcy. ED NY 1983). Creditor could then proceed on an embezzlement theory although no larceny could be alleged. What would be the

requisite elements: (1) Proof of fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. This is the common definition and is set out in *Moore v. United States,* 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1895). If the debtor has appropriated funds for his own benefit, and has done so with fraudulent intent or by deceit, then it would appear the creditor need prove no more, nor need creditor prove the highly subjective intent of "malicious injury". See *U.S. v. Walker,* 677 F.2d 1014 (4th Cir.1982). The Court herein finds that by definition: (1) the debtors' sale of secured grain in the debtors' possession; (2) the deposit of the resulting funds in an account accessible only to the debtor, and (3) the dispersal or use of those funds without explanation of reason or purpose satisfies the requirements of § 523(a)(4) as to the nondischargeable elements of an embezzlement.

The distinction many courts have found lies then in element (3) above. Where the funds have been expended by the debtor in trying to keep the business operation going, courts have been loath to find the necessary intent. It is the secretiveness, the furtiveness, the failure to explain that seems to tip the scales.

In the instant case, creditor might well have couched its complaint in the alternative under § 523(a)(6) as a willful and malicious injury under the theory that a conversion is an injury, *In re McCloud,* 7 B.R. 819, (Bkrtcy. MD Tenn.1980). Under Missouri Law a "conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's right". *In re Marshall,* 24 B.R. 105, (Bkrtcy. WD Mo. 1982). See also *Arnold v. Prange,* 541 S.W.2d 27 (Mo.App.1976).

That leads back to the same dual test. Is the act: (1) willful and (2) malicious? The same standards as set out in *In re Long,* supra, must be considered, and the mere technical conversion does not supply the needed "malicious" requirement. However, a review of cases in the Western

District of Missouri seems to illustrate once again that the secretiveness, the furtiveness or the lack of explanation as to the use of the proceeds provides (to the Bankruptcy Judges at least) the requisite intent of deliberate intended harm to the creditor. See, e.g., *In re Moore,* 37 B.R. 720 (Bkrtcy. WD Mo.1984), wherein Judge Stewart held that a claim of 38 cattle killed by one lightning bolt and then buried in an unmarked, mass grave at an unknown location was uncontrovertibly the willful and malicious type of action that precluded discharge, and *In re Daleske,* 49 B.R. 49 (Bkrtcy. WD Mo.1985) wherein Judge Pelofsky held that selling cattle in which the bank had a security interest and then invoking the privilege of the Fifth Amendment created a § 523(a)(6) nondischargeable debt.

■ This Court would prefer to establish a far simpler test and would suggest a three prong inquiry:

(1) Has the debtor sold secured property?

(2) Has the debtor used the proceeds?

(3) Has the debtor failed to demonstrate that the use was for the benefit of the estate or for some necessary purpose?

■ Purists will insist that this shifts the burden of proof and to some extent they may be correct. However, any such shift occurs only after the creditor or trustee shows both (1) and (2) above and is unable to demonstrate sufficient facts to determine what happens in (3). This also seems appropriate inasmuch as the debtor has far better knowledge as to what happened to the funds and creditor frequently has no way to demonstrate what occurred, particularly in the face of an obdurate or forgetful debtor. Instead of Judges being forced to try to distinguish between shifting scenarios as to which conversion is malicious and which is not on a scale without clear calibrations, this Court would conclude the demonstration or lack of demonstration as to the use of the funds thus obtained would become the sine qua non of malicious intent.

The Court, therefore, finds as follows:

1. Ozark Production Credit Association had a perfected security interest in the grain in question.

2. Debtors sold such grain without permission of creditor.

3. Debtors' conduct effected a conversion under § 523(a)(6).

4. Debtors' conduct was an embezzlement under § 523(a)(4).

5. Debtors failed to demonstrate or explain the use of said funds.

The Court then concludes that the conduct of debtors was willful and malicious as a matter of fact and law.

For the foregoing reasons, the Court declares the debt in the amount of $3,900.00 to Ozark Production Credit Association is non-dischargeable.