In re Lawrence W. MARINO, Jr. & Mary Etta Marino, Debtors.

STANLEY H. SILVERBLATT ELECTRICAL CONTRACTOR, INC. Plaintiff,

v.

Lawrence W. MARINO, Jr., Defendant.

Bankruptcy No. 88–5–1829–SD.
Adv. No. A88–0276–SD.

United States Bankruptcy Court,
D. Maryland.

April 21, 1992.

See also 115 B.R. 863.

Gerald Danoff, Towson, Md., for debtors.

Ralph M. Murdy, Baltimore, Md., for Stanley H. Silverblatt Elec. Contractor, Inc.

## MEMORANDUM DECISION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

E. STEPHEN DERBY, Bankruptcy Judge.

There are two issues for resolution under § 523(a)(4) of the Bankruptcy Code. First, what level of fraud is required. Second, does the mere retention of funds by a fiduciary, absent facts showing misconduct, constitute defalcation.

This proceeding is before the court on plaintiff's motion for summary judgment on its nondischargeability complaint. Plaintiff avers that it is entitled to except the debt it is owed from discharge. The argument advanced by the plaintiff is that debtor's mere use of funds received under a statutory trust imposed by Maryland law "for purposes other than paying the subcontractors" is sufficient evidence to satisfy the requisite intent to defraud under 11 U.S.C. § 523(a)(4).

Debtor responds that a state law presumption of fraud, without more, fails to satisfy the standard for proof of fraud

required under § 523(a)(4) of the Bankruptcy Code. For the reasons enumerated and discussed below, this court agrees with debtor, and the plaintiff's motion for summary judgment is denied.

## I.

### Background

This Chapter 7 bankruptcy petition was filed jointly by debtors Lawrence W. Marino, Jr. and Mary Etta Marino. Plaintiff, Stanley H. Silverblatt Electrical Contractor, Inc. ("Silverblatt"), filed the present complaint against Lawrence W. Marino, Jr. to determine the dischargeability of a debt claimed by it against him. The basis for the complaint was that debtor's corporation, as a contractor, had received certain payments in trust intended for plaintiff, a subcontractor. Plaintiff alleged that debtor, an officer of that corporation, fraudulently failed to pay the plaintiff as required by the Maryland Trust Relationships in the Construction Industry subtitle. Md. Real Prop.Code Ann. §§ 9–201 through 9–204 (1988 Repl.Vol.).

In *In re Marino*, 115 B.R. 863 (Bankr. D.Md.1990), this court addressed defendant debtor's motion to dismiss this complaint and others which had been filed against him. Therein, the court examined the applicability of the Maryland statute to § 523(a)(4) of the Bankruptcy Code. "Pursuant to § 9–201(a) [of the Trust Relationships subtitle] contractors and subcontractors who receive money from owners are trustees for such money which is held in trust." *Id.* at 869. "The trust is created, however, in favor of subcontractors '... who did work or furnished materials ... for ... the building....'" *Id.*

 Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4) (1988). The *Marino* court determined that not all trusts impose a duty sufficient to fulfill the fiduciary requirements of § 523(a)(4). "For a trust to satisfy the fiduciary capacity requirement of 11 U.S.C. § 523(a)(4), the trust on which it is based must be a technical trust in existence at the time of the defalcation." *Id.* at 868, *citing, In re Shipe*, 41 B.R. 584 (Bankr.D.Md.1984) (Mannes, J.). Therefore, implied trusts, or those created *ex maleficio*, fail to establish a fiduciary duty for the purposes of § 523(a)(4). "The fiduciary relationship must exist prior to, or independent of, the transaction from which the contested debt arises." *Id.* Cf. *In re L. Carl Holmes*, 117 B.R. 848 (Bankr.D.Md.1990). In *Marino*, § 9–201(a) of the Trust Relationships subtitle was found to have met this test, and therefore properly imposes a fiduciary duty on contractors and subcontractors. Since, in this proceeding, debtor consented to be deemed a contractor within the meaning of § 9–201(a), the fiduciary duty also extended to him personally.

## II.

### Fraud

The issue not addressed in *Marino*, however, is whether the misapplication of monies held in trust by the contractor, absent evidence of actual fraud, could be deemed fraud or defalcation for the purposes of § 523(a)(4) of the Bankruptcy Code based solely on the prima facie evidence of fraud established by the Maryland statute. Section 9–203 of the Trust Relationships subtitle provides:

> The use by a contractor or subcontractor ... of any moneys held in trust under § 9–201 of this subtitle, for any other purpose than to pay those subcontractors who did work or furnished materials, or both, for or about the building, shall be prima facie evidence of intent to defraud in a civil action.

Md. Real Prop.Code Ann. § 9–203 (1988 Repl.Vol.).

The determinative question is whether an exception to discharge under Bankruptcy Code may be satisfied by a statutory presumptive conclusion of intentional fraud, without requiring proof that fraud actually occurred. This requires an inquiry into the history and nature of fraud under bankruptcy case law.

## III.

### Historical Evolution

The subject of fraud has a well defined, and long standing, history of treatment under Federal bankruptcy law. Interpreting a portion of the Bankruptcy Act of 1867, the Supreme Court held:

> The fraud referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.... A different construction would be inconsistent with the liberal spirit which pervades the entire bankrupt system.

*Neal v. Clark*, 95 U.S. (5 Otto) 704, 709, 24 L.Ed. 586 (1877).

Moreover, under the Bankruptcy Act of 1898, the Court of Appeals for Missouri built on that foundation, by finding that a refusal to turn over monies to a plaintiff in itself was not an equivalent to positive fraud. "The fact that the defendant, when restitution was demanded, denied liability, against the great weight of evidence, could not convert the wrongful detention of the money into an original positive fraud, essential in the creation of a debt to avoid the effect of a discharge in bankruptcy." *Western Union Cold Storage Co. v. Hurd*, 116 F. 442, 444 (C.C.W.D.Mo.1902).

More recently under § 523 of the Bankruptcy Code of 1978, this definition of fraud has been carried forward into current usage. In *In re Shipe*, 41 B.R. 584 (Bankr.D.Md.1984) (Mannes, J.), this court explicitly adopted the *Neal v. Clark* definition of fraud as applied to § 523 dischargeability actions. Therein, this court required " '... positive fraud or fraud in fact, involving moral turpitude, as does embezzlement[.]' " *Id.* at 586. The *Shipe* court failed to find fraud where "[t]he only evidence produced by the plaintiff of fraud ... at the time of the assignment was the failure of the [debtor] to turn over the proceeds at a later date. Generally, the mere breach of a promise to pay does not support a finding of fraud." *Id.* at 587.

Various other courts have also concluded that fraud under both §§ 523(a)(2) and (a)(4) may only be satisfied by "fraud in fact, involving moral turpitude or intentional wrong rather than implied or constructive fraud." *In re Black*, 787 F.2d 503 (10th Cir.1986); *see also, Schweig v. Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986); *Gabellini v. Rega*, 724 F.2d 579, 581 (7th Cir.1984); *In re Witt*, 13 B.R. 848, 850 (Bankr.W.D.Va.1981); *In re Calhoun*, 131 B.R. 757 (Bankr.D.D.C.1991); *In re Denson*, 7 B.R. 213, 215 (Bankr.E.D.Va.1980); *In re Hallman*, 12 B.R. 502, 505 (Bankr. W.D.Va.1981).

## IV.

### Discussion

■ Collier's on Bankruptcy defines actual fraud as "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *Collier's on Bankruptcy*, ¶ 523–09, 523–59–523–61 (15th ed. 1991). Fraud in fact is fraud "disclosed by matters of fact," whereas fraud in law "is fraud implied or inferred by law; fraud made out by construction of law." *Black's Law Dictionary*, 789 (4th ed. 1968).

Section 9–203 of the Maryland Trust Relationships subtitle is fraud in law. It presumes an intent to defraud without requiring facts be demonstrated to prove that positive, immoral acts were in fact conducted. While the act of using funds earmarked for another might constitute a basis for constructive fraud, this court cannot determine that actual fraud, or conduct evidencing moral turpitude, occurred without supplementary facts which would prove that positive fraud was committed.

The standard of proof in dischargeability actions is preponderance of evidence. *See Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, the above case law amply demonstrates that this standard must be satisfied with evidence of actual fraud. There is neither authorization, nor any justification, for im-

posing what amounts to a constructive fraud on worthy debtors absent a showing of actual fraud. "The court must therefore strictly construe the exceptions to discharge[.]" *Shipe*, 41 B.R. at 586.

■ Section 523(a)(4) also provides that "defalcation" in a fiduciary capacity may constitute a basis for denial of discharge. Unlike fraud, the standard of conduct required to establish defalcation under § 523(a)(4) is less precise. "Defalcation is broader than 'embezzlement' and probably broader than 'misappropriation.'" *Collier's on Bankruptcy*, ¶ 523.14, 523–103 (15th ed. 1991). In *Central Hanover Bank & Trust v. Herbst*, 93 F.2d 510 (2d Cir. 1937), Judge Learned Hand delivered an insightful view on the scope of defalcation under the Bankruptcy Act of 1867. In *Herbst*, the debtor had acted as a receiver in a foreclosure action, and had taken and spent a premium commission he had received prior to ascertaining whether the plaintiff would appeal his premium. In rejecting the debtor's contentions that no misconduct had occurred, Judge Hand wrote: "Whatever was the original meaning of 'defalcation,' it must here have covered other defaults than deliberate malversations, else it added nothing to the words, 'fraud or embezzlement.'" *Id.* at 511. "... '[M]isappropriation must be due to a known breach of the [fiduciary] duty, and not to mere negligence or mistake.' Although that word probably carries a larger implication of misconduct than 'defalcation,' 'defalcation' may demand some portion of misconduct; we will assume arguendo that it does." *Id.* at 512.

In *Gonzales v. Raiser Construction*, 22 B.R. 58 (9th Cir. BAP 1982), the court was faced with nearly the same scenario posed here. Under a construction contract, payments received by the contractor for the subcontractor "immediately became and constituted a trust fund for the" subcontractors. In *Gonzales*, the trial court made specific findings of fact "that [payor] paid [debtor] $34,452.20 and that debtor had diverted $26,663.18 to other projects and failed to pay Pacific Ready Mix, a materialman, and Donald Peckman, a laborer, on

the [payor's] two projects." *Id.* at 59. The Panel affirmed a finding of defalcation below since "the trial court did not find the debtor acted fraudulently but found that he committed a defalcation with respect to funds which he held in trust." *Id.*

In the present dispute, the plaintiff has not specifically pled defalcation in either its complaint, or its motion for summary judgment. However, "[p]ursuant to § 523(a)(4) a debt is not subject to discharge if the debtor, in a fiduciary capacity, engages *either* in fraud or defalcation with respect to funds held in trust." *Gonzales*, 22 B.R. at 59 (Emphasis supplied). The only facts set out by the plaintiff to support a finding of fraud or defalcation are that money was paid to defendant by owners and that "[d]efendant used said money for purposes other than paying the subcontractors *as the* Plaintiff's legal bill remains unpaid." (Emphasis supplied). In addition, plaintiff concludes without explanation that "[d]efendant, while acting in a fiduciary position; unlawfully and fraudulently coverted [sic] money due to the Plaintiff." Plaintiff's complaint (count # 3).

The above fact regarding non-payment, absent any elaboration on the misuse, is found in the plaintiff's amended complaint, its motion for summary judgment, and its affidavit in support thereof. By its own terms, this use "for purposes other than paying the subcontractors" is solely premised only on plaintiff's unpaid bill. Aside from specifically stating that its bill is unpaid, there is not a single fact set forth which would establish misconduct. The assumption that conclusive acts of wrongdoing equivalent to defalcation arise from the simple non-payment of a bill assumes too much, even in a fiduciary relationship. It may very well be that facts evidencing misconduct occurred, but without having them brought to light by plaintiff, they remain obscured and unknown. Consequently, this court cannot make findings of fact in a vacuum.

In both *Herbst* and *Gonzales* defalcation was found after reviewing the specific facts which satisfied the "demand for some portion of misconduct." *Herbst*, 93 F.2d

512. Plaintiff's argument for summary judgment is entirely hinged on the nexus between its unpaid bill and a Maryland statutory presumption of wrongdoing from debtor's use of trust funds for a purpose other than paying plaintiffs. *See e.g.* Plaintiff's complaint (count # 3), Plaintiff's amended complaint (count # 3–4), Plaintiff's memorandum, Plaintiff's motion for summary judgment (para. # 8–9), Affidavit in support of plaintiff's motion for summary judgment (para. # 8). No facts evidencing a diversion, or other misconduct are averred as undisputed by plaintiff which would enable this court to conclude a wrongdoing has occurred. Like Judge Hand, "[w]e do not hold that no possible deficiency in a fiduciary's accounts is dischargeable[.]" *Herbst,* 93 F.2d 512. To do so would bring about an automatic denial of discharge for any fiduciary who fails to pay a trust fund over to a beneficiary. Absent a requirement that the plaintiff at least advance specific facts as undisputed which would establish *prima facie* evidence of wrongdoing beyond failure to pay, the requirement of misconduct is treated too lightly.

## V.

### *Summary Judgment*

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings ...' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* 477 U.S. at 325, 106 S.Ct. at 2554. In addition, "[t]he substantive law will determine which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the present dispute, the substantive law governing plaintiff's dischargeability complaint of fraud is § 523(a)(4) of the Bankruptcy Code, and not the Maryland Trust Relationships subtitle. In the bankruptcy court, state law should be applied where no "federal interest requires a different result." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In its motion, plaintiff recites that no genuine dispute as to any material fact exists. Apparently in support of this, plaintiff states that "Defendant used said money from owners for purposes other than paying the subcontractors as the Plaintiff's bill to Defendant remains unpaid." The non-moving defendant responds by general denial that he acted with intent to defraud.

Beyond the allegation that defendant failed to pay plaintiff, there are no facts specified or established which would evidence acts of intentional fraud or moral turpitude. Further, no fact which would show any degree of misconduct other than failing to pay a bill has been placed into evidence. Therefore, plaintiff has failed to meet his burden of showing the existence of any undisputed material facts which would, uncontradicted, demonstrate the "absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

## VI.

### *Conclusion*

Fraud under § 523(a)(4) must be actual and fraud in fact involving moral turpitude or intentional wrongdoing. Plaintiff is not entitled to judgment as a matter of law under § 523(a)(4) because the state law presumption of fraud does not satisfy to the Bankruptcy Code. Defalcation under § 523(a)(4) is broader than misappropriation, yet still requires a *prima facie* showing of facts which would evidence affirmative misconduct. Plaintiff has failed to sufficiently set out a showing to demonstrate the absence of a genuine material fact in dispute under Federal Rule of Bankruptcy

Procedure 7056(c). Accordingly, plaintiff's motion for summary judgment is denied.