**In re Roy William BRYANT, Jr., Linda Rae Bryant, Debtors.**

**FIRST STATE INSURANCE COMPANY and Cameron & Colby Company, Inc., Plaintiffs,**

v.

**Roy William BRYANT, Jr. & Linda Rae Bryant, Defendants.**

**Bankruptcy No. 90–20593–C. Adv. No. 92–2017–C.**

United States Bankruptcy Court, W.D. Missouri.

Nov. 18, 1992.

Christopher D. Werner, Kansas City, Mo., for plaintiffs.

Jerry Venters, Jefferson City, Mo., for defendants.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

This case come before the Court on the Plaintiffs' objections to discharge in the underlying bankruptcy case, *In Re: Roy William Bryant, Jr. and Linda Rae Bryant*, which was filed on September 11, 1990 and closed on March 29, 1991. Plaintiffs originally alleged fraud and embezzlement as a result of a failure to remit insurance premiums but subsequently were allowed to amend their pleadings to include the failure to schedule or notify the creditor, the failure to explain the loss of assets, and the failure to preserve books or records. A hearing was held at which time the parties were allowed to brief any issues raised in Plaintiffs' complaint. The Court has reviewed the written arguments of counsel, the relevant case law, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiffs' complaint should be DENIED.

## FACTS

At the trial, the transactions that gave rise to this Complaint were generally undisputed. The Plaintiffs' are Cameron & Colby Company, Inc. and First State Insurance Company, creditors of the Defendants, Roy William Bryant, Jr. and Linda Rae Bryant. Defendants were the principal officers and directors of R.W. Bryant & Co., Inc., a Missouri excess and surplus lines brokerage. The Plaintiffs and R.W. Bryant & Co., Inc. entered into an agreement on April 13, 1981 by which Bryant was to place coverage for various insureds with excess and surplus lines insurance companies at the request of retail brokers.

Bryant and Ned O'Laughlin, Vice President of First State Insurance Company, testified that excess and surplus lines companies are not licensed for retail sales within the State of Missouri and must accept coverage only through registered surplus lines brokers. The testimony established that at all times relevant to the transactions in question, Bryant was licensed as a surplus line broker by the Missouri Department of Revenue.

Lockton Insurance Agency ("Lockton") is an independent insurance agency which placed coverage with various excess and surplus line brokers, including R.W. Bryant & Co., Inc. Gary Hambright, an insurance agent employed by Lockton, testified as to operating procedures between the two companies. Hambright testified that business was done with R.W. Bryant & Co., Inc. on an account current basis, and that the company would send them statements for premiums placed for Lockton's insureds with various insurance companies. In turn, Lockton would forward an account current check, the amount of which reflected the sum total of all the premium payments that were due at that time during the billing period. After receiving the check sent by Lockton, Bryant would remit R.W. Bryant & Co., Inc. checks to the various excess and surplus line insurance companies to pay the premiums.

The first transaction that forms the basis of this action occurred regarding an insured, Southeast Manufacturing Company ("Southeast"). Southeast's coverage was placed with R.W. Bryant & Co., Inc. for the period of November 14, 1985 through November 14, 1986. The premium forwarded from Lockton to R.W. Bryant & Co., Inc.

was in the amount of $22,253.00.[1] Mrs. Bryant's signature appeared on the back of the check deposited into the Mark Twain Bank corporate account.

The second of Plaintiffs' allegations involves Millstone Lodge ("Millstone"), also an insured. On February 13, 1986, Lockton forwarded a draft to R.W. Bryant & Co., Inc. in the amount of $44,182.27, a portion of which reflected payment for the premium of Millstone.[2] Mr. Bryant's signature appeared on the back of the check deposited into the Mark Twain Bank corporate account.

On April 15, 1986, notice was sent to all R.W. Bryant & Co., Inc. agents that the company was closing. At this time, or shortly thereafter, Plaintiffs determined that the premium payments intended to cover Southeast and Millstone had not been received. Notice of cancellation regarding Southeast was received by Lockton the same week. Cameron & Colby Company, Inc., the underwriting arm of First State Insurance Co. was ordered by the Missouri Department of Insurance to reinstate coverage for the insured as they considered the premium payments forwarded to Bryant as being de facto payments to Cameron & Colby Company.

Donald Walters, an investigator with the Missouri Department of Insurance, testified that in August of 1986 he met with Bryant and Bryant's attorney pursuant to Subpoena to discuss allegations of Bryant's misappropriation of funds. Bryant consented to a voluntary revocation of his Missouri Insurance Agents License, Surplus Line Broker's License, Broker's License and Insurance Agency License of R.W. Bryant and Company, Inc. Plaintiffs suggest that the consent to revocation occurred as a result of Bryant's misappropriation of funds. Bryant testified that he was unable to afford attorney's fees to contest the revocation.

## DISCUSSION

Plaintiffs allege that Defendant's debt is nondischargeable in bankruptcy because (1) it resulted from fraud or defalcation while acting in a fiduciary capacity, and/or embezzlement under 11 U.S.C. 523(a)(4); (2) Defendant failed to schedule or notify the Plaintiffs as required by 11 U.S.C. 523(a)(3); and that defendants should not have received a discharge because (3) Defendant failed to explain the loss of assets as required by 11 U.S.C. 727(a)(5); and (4) Defendant failed to preserve the books or records under 11 U.S.C. 727(a)(3). The Court does not consider the issue of Defendants' discharge in great detail because under 11 U.S.C. § 727(e) the time frame for revocation has passed. Each of these allegations is discussed separately below.

The Plaintiffs have the burden of proving nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). In determining whether a particular debt falls within one of the exceptions to discharge set out in 11 U.S.C. 523, the courts have universally held that the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor. *In re Long*, 774 F.2d 875, 879 (8th Cir.1985).

### I. 11 U.S.C. 523(a)(4).

11 U.S.C. 523(a) provides the exceptions from the discharge of a Debtor. Section 523(a)(4) states:

(a) A discharge under 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

.     .     .     .     .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ....

Plaintiffs assert that this individual debt is nondischargeable in bankruptcy because it resulted from fraud or defalcation while acting in a fiduciary capacity, and/or em-

---

**1.** The total draft amount was $121,960.86, which reflected other premiums due to be paid to R.W. Bryant & Co., Inc. by Lockton.

**2.** The Millstone portion of this premium was in the amount of $22,758.75.

bezzlement. Each of these particular allegations will be addressed individually.

### A. Fraud or Defalcation While Acting in a Fiduciary Capacity

In order to prove the debt resulted from fraud or defalcation under section 523(a)(4), the Plaintiff must first establish that the Defendants were acting in a fiduciary capacity. Defendants have conceded this point pursuant to the holding in *Matter of Whitlock*, 449 F.Supp. 1383 (W.D.Mo. 1978).[3]

Plaintiffs attempt to utilize *Whitlock* to assert personal liability onto Defendants. In *Whitlock*, Judge Collinson found that Sections 375.051 and 375.121, R.S.Mo. created a personal liability on the individual who receives and controls insurance premiums, and held that failure to remit those premiums constituted a "misappropriation" within the meaning of 11 U.S.C. 35(a)(4), the forerunner of Section 523(a)(4). *Id.*

■ Section 523(a)(4) has deleted "misappropriation" of an officer or fiduciary from the Code's exceptions to discharge. The Plaintiffs' reliance on misappropriation to create personal liability is therefore misplaced. The Code now requires a showing of fraud or defalcation. Therefore, there are two issues for resolution under Section 523(a)(4) of the Bankruptcy Code. First, what level of fraud is required. Second, does the mere retention of funds by a fiduciary, absent facts showing misconduct, constitute defalcation.

### 1. *Fraud*

The Supreme Court has defined fraud under Section 523 of the Bankruptcy Code, as "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement, and not implied

fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.... A different construction would be inconsistent with the liberal spirit which pervades the entire bankrupt system." *Neal v. Clark*, 95 U.S. (5 Otto) 704, 709, 24 L.Ed. 586 (1877) (construing Section 17a(4) of the Bankruptcy Act of 1867, the forerunner of 523(a)(4)). *See also,* 3 *Collier on Bankruptcy*, 523.14[1][a], pp. 523–102, 103 (15th Ed.1992).

Various courts have agreed and concluded that fraud under Section 523(a)(4) may only be satisfied by "fraud in fact, involving moral turpitude or intentional wrong rather than implied or constructive fraud." *In re Black*, 787 F.2d 503 (10th Cir.1986); *see also, Schweig v. Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986); *Gabellini v. Rega*, 724 F.2d 579, 581 (7th Cir.1984). This Court hereby accepts the above definition of fraud under 523(a)(4).[4]

■ Plaintiffs have produced no evidence that Defendants have committed any acts of positive or actual fraud. Plaintiffs have also failed to produce evidence of intentional wrongs or acts of moral turpitude by Defendants. Plaintiffs' evidence only proves that the premium payments made by Lockton were deposited in the corporate account of R.W. Bryant & Co., Inc. and that the funds were not remitted to Plaintiffs. From the evidence presented the Court apprehends that in each of the two payments, including the premiums which were not paid by Defendants, there were other premiums paid by the checks to Bryant which then were paid. In other words, not all of the $121,960.86 check or of the $44,182.27 check was used by Defendants and other premiums paid by said item were then paid by Bryant.

---

**3.** *Matter of Whitlock*, 449 F.Supp. 1383 (W.D.Mo.1978), held that in facts similar to the instant case, Whitlock, an insurance agent, was a fiduciary with respect to unremitted premiums collected by his agency pursuant to Sections 375.051 and 375.121 R.S.Mo.1969.

**4.** Plaintiffs suggest that the elements of a fraud action include false, material representation, and the speaker's knowledge of its falsity. *Anchor Centre Partners, Ltd. v. Mercantile Bank,*

*N.A.*, 803 S.W.2d 23 (Mo.1991) Plaintiffs further suggest that the actor must intend that the representation he acted upon by the plaintiff in a manner reasonably contemplated, and that plaintiff must be ignorant of the falsity of the statement. *Norden v. Friedman*, 756 S.W.2d 158 (Mo.1988). Neither of the above cited cases contemplates fraud in relation to 11 U.S.C. 523(a)(4).

The Court of Appeals for Missouri, under the Bankruptcy Act of 1898, found that a refusal to turn over monies to a plaintiff in itself was not an equivalent to positive fraud. "The fact that the defendant, when restitution was demanded, denied liability, against the great weight of evidence, could not convert the wrongful detention of the money into an original positive fraud, essential in the creation of a debt to avoid the effect of a discharge in bankruptcy." *Western Union Cold Storage Co. v. Hurd,* 116 F. 442, 444 (C.C.W.D.Mo.1902). In accordance with this rule, Plaintiffs have failed to prove that Defendants committed any actual or positive fraudulent acts that deprived Plaintiffs of the premiums.

Beyond the allegation that Defendants failed to pay Plaintiffs, there are no facts specified or established which would prove fraud as provided under 11 U.S.C. 523(a)(4).

### 2. *Defalcation*

Section 523(a)(4) also provides that "defalcation" in a fiduciary capacity may constitute a basis for denial of discharge. Unlike fraud, the standard of conduct required to establish defalcation under Section 523(a)(4) is less precise. "Defalcation is broader than 'embezzlement' and probably broader than 'misappropriation.'" 3 *Collier on Bankruptcy* 523.14[1][a], pp. 523–102, 103 (15th Ed.1992).

As stated above, Plaintiffs place their reliance on *Whitlock* to establish a 523(a)(4) exception to discharge. However, in *Whitlock,* the failure to remit premiums to the insurance company constituted a "misappropriation," not a defalcation.

Defendants correctly cite *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2d Cir.1937), as the leading case determining the scope of defalcation.[5] In *Central Hanover,* the debtor had acted as a receiver in a foreclosure action, and had taken and spent a premium commission he had received prior to ascertaining whether the plaintiff would appeal his report. *Id.*

Finding that defalcation is a broader term than misappropriation, the Court assumed that "some portion of misconduct" was required before a debtor could be found guilty of a defalcation. *Id.* at 512.

Both Plaintiffs' and Defendants' counsel cite *In re Johnson,* 691 F.2d 249 (6th Cir. 1982) in which the Sixth Circuit examined Judge Hand's holding in *Central Hanover.* Each agree that some portion of misconduct, however slight, must be shown in order to deny a debtor discharge on the basis of defalcation while acting in a fiduciary capacity.

Plaintiffs urge this Court to follow *Central Hanover* and conclude that the mere taking of money entrusted to a fiduciary constitutes a defalcation. *In re Johnson,* 691 F.2d 249, 255 (6th Cir.1982). The misconduct, as claimed by Plaintiffs, was in Defendants failure to remit the insurance premiums held in express trust for Plaintiffs pursuant to Section 371.121 R.S.Mo. (1986 Supp.).

Plaintiffs have produced no evidence, beyond the failure to remit premiums, which would establish misconduct. In analogizing an unremitted premium to an unpaid bill, this Court agrees with *In re Marino,* 139 B.R. 380 (Bankr.D.Md.1992). "The assumption that conclusive acts of wrongdoing equivalent to defalcation arise from the simple non-payment of a bill assumes too much, even in a fiduciary relationship." *Id.* at 384.

Moreover, this Court notes that *Central Hanover* did not decide the issue of whether innocent defaults were included in the scope of defalcation. *In re Johnson,* 691 F.2d at 255. No facts evidencing a diversion of the funds are alleged which would enable this Court to conclude that misconduct has occurred. What the evidence did show was that R.W. Bryant & Co., Inc. failed due to a general "softening" of the insurance market nationwide and a collapse of the business of insuring space shuttles, of which R.W. Bryant & Co., Inc. had a

---

5. *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2d Cir.1937) outlined the meaning of defalcation under the Bankruptcy Act of 1867. The Court held that the meaning of defal-

cation had not changed since this time. *See also, Crawford v. Burke,* 195 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147 (1904) (in which the court construed defalcation under the various acts).

small but, to it, significant part. Furthermore, the evidence shows an impossibility of Defendants to remit the premiums once the insurance agency began to fail as a result of Mark Twain Bank taking control of all the company's accounts and records. Defendants also appear "innocent" in light of the fact that until the agency failed, Lockton never had any problems on its accounts with Bryant or R.W. Bryant & Co., Inc.

Plaintiff has failed to prove any portion of misconduct of Defendants sufficient to amount to a defalcation under 523(a)(4).

B. Embezzlement

■ Plaintiffs also assert that Defendants have embezzled the premiums under 523(a)(4). "Embezzlement, for the purposes of this section, is the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come. A plaintiff must establish that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used." *In re Casagrande*, 143 B.R. 893 (Bankr.W.D.Mo.1992) (*quoting, In re Belfry*, 862 F.2d 661, 662 (8th Cir.1988) (citations omitted)). It is uncontroverted that the premiums rendered by Lockton on behalf of their insureds to R.W. Bryant & Co., Inc. came into Defendants' hands lawfully pursuant to the brokerage agreement.

This Court set out the standards for asserting an embezzlement theory in *In re Beasley*, 62 B.R. 653 (Bankr.W.D.Mo.1986). The Court held that the requisite elements are:

(1) The appropriation of funds for the debtor's own benefit, by fraudulent intent or deceit;

(2) The deposit of the resulting funds in an account accessible only to the debtor; and

(3) The disbursal or use of those funds without explanation of reason or purpose.

62 B.R. at 655.

Plaintiffs have failed to meet any of the requisite elements of *Beasley* as well as the requirement in *Belfry*. Plaintiff has failed to prove that Defendants have appropriated the funds for their own benefit. The evidence clearly establishes that the premium payments were placed in R.W. Bryant & Co., Inc.'s corporate account. Plaintiff has also failed to prove Defendants used the funds for any purpose other than to which they were lawfully entitled. The evidence demonstrates that the funds were used only to carry on the business of R.W. Bryant & Co., Inc. Furthermore, this Court has stated that "where the funds have been expended by the debtor in trying to keep the business operation going, courts have loathed to find the necessary intent." 62 B.R. at 655.

To circumvent the evidence that Defendants utilized the funds to keep their business operation going, Plaintiffs assert "secretiveness" or "furtiveness" to show Defendants intent to embezzle. Among their arguments, Plaintiffs cite to Defendants' frequent housing relocations, Defendants' loss of personal assets and net worth, and Defendants incurring substantial debt to Mark Twain Bank after their business failed. None of these citations prove fraudulent intent by Defendants. Defendants placed the funds in the business' corporate account solely for the purpose of maintaining the company.

II. 11 U.S.C. 523(a)(3). Failure to Schedule or Notify Creditor.

■ Section 523(a)(3) will not allow the discharge of a debt "neither listed nor scheduled under 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(B) If such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a Proof of Claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor has notice or actual knowledge of the case in time for such timely filing and request;"

11 U.S.C. 523(a)(3).

Defendants clearly failed to list Plaintiffs in their original Bankruptcy Sched-

 

ules. However, they took immediate steps to reopen their bankruptcy estate and list Plaintiffs' claims when Plaintiffs commenced an action in the Jackson County Circuit Court.

Pursuant to 11 U.S.C. 350(b), "a case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. 350(b). The decision as to whether to reopen a bankruptcy case and allow amendment of schedules is committed to the sound discretion of the bankruptcy judge. *In re Rosinski,* 759 F.2d 539, 540–41 (6th Cir.1985). "A case cannot be reopened if a debtor's original failure to schedule a debt can be shown to have prejudiced the omitted creditor or to have been fraudulent, willful or reckless. If, however, the omission was simply the result of an inadvertent mistake, the debtor may be allowed to reopen the case and amend its schedules." *In re Dodge,* 133 B.R. 654 (Bankr.W.D.Mo.1991) (*citing In re Soult,* 894 F.2d 815, 817–818 (6th Cir.1990)).

■ Where the debtor has failed to schedule a creditor, the burden lies with that debtor to justify the reopening of the case. *Rosinski,* 759 F.2d at 542. The justification must be sufficient to show that the failure to schedule was not fraudulent, willful, or reckless. *Id.* In this case, Defendants have asserted that their omission of Plaintiffs from their Bankruptcy Schedules was due to an inadvertent mistake. In that the bankruptcy action was filed four years after R.W. Bryant & Co., Inc. closed its doors and Defendants were not billed during that time, Defendants have proved their inadvertence.

As Plaintiffs have failed to claim prejudice by Defendants' failure to schedule them as creditors and Defendants failure to schedule Plaintiffs was not fraudulent, reckless or willful, this Court concludes that Plaintiffs have failed to prove a 523(a)(3) claim.

III. 11 U.S.C. 727(a)(5). Failure to Explain Loss of Assets.

11 U.S.C. 727(a)(3). Failure to Preserve Books/Records.

Plaintiffs' amended pleading alleges Defendants' failure to explain loss of assets

and to preserve books or records as exceptions to discharge under 11 U.S.C. 727. Plaintiffs, however, did not present these arguments at the hearing before this Court on August 20, 1992. For this reason and the fact of the time element noted above, these exceptions to discharge (if they constitute same) are also denied.

### CONCLUSION

For the reasons discussed above, the Court finds Plaintiffs' objections to discharge in the underlying bankruptcy case to be insufficient. Plaintiffs Motion is, therefore, DENIED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under 7052, Rules of Bankruptcy.

SO ORDERED.