In re Andrew MESSINEO, Debtor.

OFFICE OF PUBLIC GUARDIAN,
Guardian of Concetta Messineo,
Plaintiff,

v.

Andrew MESSINEO, Defendant.

Bankruptcy No. 93–11629–MWV.
Adv. 94–1091–MWV.

United States Bankruptcy Court,
D. New Hampshire.

Feb. 13, 1996.

Kathleen M. Earnshaw, The Legal Clinics, Nashua, NH, for Gail Page Office of Public Guardian.

Roland R. Tamminga, Belmont, NH, for Andrew Messineo.

Victor W. Dahar, Trustee, Manchester, NH.

## MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge.

The Court has before it the complaint of the Office of Public Guardian ("OPG"), guardian of Concetta Messineo, the Plaintiff, against Andrew Messineo, the Debtor/Defen-dant, seeking the exception from discharge of certain debts owed by the Defendant to the Plaintiff under section 523(a)(4) of the Bankruptcy Code. This adversary complaint was submitted to the Court for its decision upon an agreed statement of facts, including exhibits and memoranda of law filed by both the Plaintiff and the Defendant.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

For the reasons set out below, the complaint is denied with respect to the $25,000.00 withdrawal of funds and granted with respect to the $8,977.39 spent on home improvements and the $1,775.00 value of removed personal property.

### FACTS

During the late 1980s and early 1990s, the Defendant's mother, Concetta Messineo, was of older years, infirm, and living with the Defendant in Lowell, Massachusetts. (Stipulated Facts ¶ 1.) The Defendant's mother transferred funds to a joint account held by her and the Defendant shortly after her husband died. (Stipulated Facts ¶ 2.) Shortly after the transfer, a sum in excess of $25,-000.00 was withdrawn from the joint account by the Defendant. (Stipulated Facts ¶ 3.)

On March 6, 1991, the Defendant and the OPG were appointed as co-guardians of the guardianship estate of Concetta Messineo by the Strafford County Probate Court. (Stipulated Facts ¶¶ 4 and 5; Plaintiff's Ex. 1.) At the guardianship hearing, the Probate Court ruled that the $25,000.00 withdrawn by the Defendant prior to his appointment as co-guardian was not a gift, but a loan, and ordered the Defendant to execute a promissory note secured by a mortgage in the amount of $25,000.00, which the Defendant did. (Stipulated Facts ¶¶ 6 and 8; Plaintiff's Ex. 4 and 5.) No formal finding of impropriety with respect to the $25,000.00 with-

drawal was made by the Probate Court, and no admission of impropriety was made by the Defendant. (Stipulated Facts ¶ 9.)

In 1992, the co-guardians agreed to improve the property in Lowell which was jointly owned (with right of survivorship) by the Defendant and his mother. (Stipulated Facts ¶¶ 11 and 12.) A total of $17,954.78 was withdrawn from the estate by the OPG, the co-guardian in control of the liquid assets of the estate, and applied toward the improvements. (Stipulated Facts ¶¶ 10 and 13.) On January 5, 1993, the Probate Court learned of this expenditure. (Stipulated Facts ¶ 14.) On January 17, 1993, the Probate Court issued a written opinion and found that this expenditure was without advance court authorization. (Stipulated Facts ¶ 14.) The court also ordered the Defendant to repay half of the $17,954.78 expenditure, or $8,977.39, because the Defendant received a personal benefit in that amount as he was joint owner of the Lowell property. (Stipulated Facts ¶¶ 16 and 17; Plaintiff's Ex. 2, at 4–5.) The court specifically stated it was not casting any judgment on the propriety or impropriety of the expenditure. (Stipulated Facts ¶ 15.)

Sometime in 1992 or early 1993, the Defendant removed items of personal property from the Lowell property. (Stipulated Facts ¶ 21.) The OPG asserted that the items removed belonged to the Defendant's mother and not the Defendant. (Stipulated Facts ¶ 22.) At a hearing held by the Probate Court on May 25, 1993, the Defendant asserted ownership in the items. (Stipulated Facts ¶ 24.) The Probate Court found that the items in question belonged to the Defendant's mother. (Stipulated Facts ¶ 28.) The Probate Court ordered that the Defendant either: (1) return the property; (2) pay the guardianship estate $1,775.00; or (3) subject any remaining equity he had in the Lowell property to the right of the guardianship estate to recover, which right would constitute a judicial lien on the proceeds pending restitution in full. (Stipulated Facts ¶ 30; Plaintiff's Ex. 3, at 5.) The property was not returned to the estate. (Stipulated Facts ¶ 32.)

At the May 25, 1993, hearing, the Probate Court also removed the Defendant as co-guardian because his co-guardianship status was found to be adverse to the interests of his mother and the guardianship estate. (Stipulated Facts ¶ 32; Plaintiff's Ex. 3, at 6.)

## DISCUSSION

The OPG argues that the debts owed for the Defendant's $25,000.00 withdrawal of funds, the $8,977.39 spent on home improvements, and the $1,775.00 in personal property removed by the Defendant should be excepted from the Defendant's discharge pursuant to 11 U.S.C. § 523(a)(4). Section 523(a)(4) provides that, "[a] discharge under section 727 ... does not discharge an individual debtor from any debt—for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." In order for the OPG to prevail under section 523(a)(4), it must prove by a preponderance of the evidence that the Defendant committed fraud or defalcation while acting in a fiduciary capacity or committed embezzlement or larceny. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Brixius v. Christian (In re Christian),* 172 B.R. 490, 495 (Bankr.D.Mass.1994).

### $25,000.00 Withdrawal

The Defendant removed $25,000.00 from a joint bank account held by the Defendant and his mother. While there is no indication in the record of the exact date on which the Defendant removed said money, the record indicates that the money was removed before the Defendant was appointed a co-guardian of his mother's estate on March 6, 1991. There is no other evidence in the record to indicate that prior to his appointment as co-guardian the Defendant was acting in any "fiduciary" capacity.

The law is clear in this jurisdiction that "technical trusts, not implied trusts, are those that lead to a nondischargeable debt." *BAMCO 18 v. Reeves (In re Reeves),* 124 B.R. 5, 7 (Bankr.D.N.H.1990). "[T]he term 'fiduciary' in the Bankruptcy Code is narrower than the word as used under state law." *Id.* at 9; *Ducey v. Doherty (In re Ducey),* 160 B.R. 465, 469 (Bankr.D.N.H.1993) *(citing*

*Reeves* ). "The federal law is aimed only at the express trust situation in which the debtor either expressly signified his intention at the outset of the transaction, or was clearly put on notice by some document in existence at the outset, that he was undertaking the special responsibilities of a trustee to account for his actions ..." *Reeves,* 124 B.R. at 10; *Ducey,* 160 B.R. at 469 (*citing Reeves* ). Because there is no evidence that the Defendant expressed an intent at the time he and his mother opened the joint bank account to act in a fiduciary capacity, this debt cannot be found excepted from discharge on the basis that the Defendant incurred this debt through fraud or defalcation "while acting in a fiduciary capacity."

The debt, however, can be excepted from discharge under section 523(a)(4) *if* the debt is the result of embezzlement or larceny. The OPG has not suggested that the debt be excepted from discharge on the grounds that the debt was incurred through embezzlement or larceny. There is no evidence in the record to indicate that the Defendant was ever charged or convicted of either crime.

Accordingly, the $25,000.00 debt is not excepted from discharge. However, to the extent there is value in the Defendant's interest in the Lowell property, the mortgage on property located at 65 Temple Street, Lowell, Massachusetts, remains in full force and effect.

### $8,977.39 Spent on Home Improvements

■ As noted above, section 523(a)(4) is aimed only at the express trust situation in which the Defendant either expressly signified his intention or was clearly put on notice that he was undertaking the special responsibilities of a trustee to account for his actions. *Reeves,* 124 B.R. at 10; *Ducey,* 160 B.R. at 469 (*citing Reeves* ). At the time the Defendant used $8,977.39 to pay for home improvements he was co-guardian of his mother's estate. As co-guardian his rights, duties, and powers were set forth in the March 6, 1991, Decree of the Probate Court. (*See* Plaintiff's Ex. 1.) The Defendant was clearly put on notice of his fiduciary capacity, and there does not seem to be an issue raised in this case as to whether the Defendant was in fact a "fiduciary" for purposes of section 523(a)(4) after the Defendant was appointed co-guardian. In this respect, this case is like *Peerless Ins. Co. v. Misiaszek (In re Misiaszek),* 162 B.R. 80 (Bankr.D.N.H.1993) ("As a co-trustee for the decedent's estate, debtor clearly was a fiduciary responsible to act in accordance with the documents in question and applicable state law.").

A debt incurred while acting in a fiduciary capacity is only excepted from discharge if the debt is the result of fraud or defalcation. Here, there is no indication that the Defendant acted fraudulently. Rather, the OPG argues that there was a defalcation. Defalcation has been defined as "a failure to observe clear and specific restrictions and limitations upon the fiduciary in either the trust document or the applicable statutory law and does not require as an element therefore some sort of bad faith on the part of the fiduciary." *Id.* at 82.

The March 6, 1991, Probate Court Decree specifically states that the co-guardians "[s]hall not apply any assets of the ward's guardianship to the co-guardians of the estate's own personal benefit, whether or not as compensation for services or out-of-pocket expenses" without prior written court approval. (Plaintiff's Ex. 1, at 6.) The Defendant failed to follow these directions when he used money to make improvements to a home of which he was joint owner. The Court finds that this action by the Defendant was a defalcation of his fiduciary duty as co-guardian of his mother's estate.

These facts are similar to those in *Estate of Neilson v. Simpson (In re Simpson),* 37 B.R. 132 (Bankr.D.N.H.1984). In that case, the debtor, in his capacity as administrator of an estate, authorized a bank to withdraw funds from the estate account and apply it to the balance due on a demand note upon which the estate and the debtor were obligated. *Id.* at 132. The Probate Court found the disbursement improper, disallowed it, and ordered the debtor to repay the sum. *Id.* at 133. The Bankruptcy Court held that the debt was nondischargeable since the debtor knew that the payment was subject to approval by the Probate Court and might be challenged. *Id.* at 136. Accordingly, the

Court found that the payment of such debt was a defalcation of fiduciary duty under section 523(a)(4). *Id.*

Because this debt was incurred as the result of the Defendant's defalcation while acting in a fiduciary capacity, the $8,977.39 spent for home improvements to the Lowell property is excepted from discharge under section 523(a)(4).

### *$1,775.00 in Personal Property Removed*

 As explained above, the Defendant was a fiduciary once he assumed the role of co-guardian of his mother's estate. While a co-guardian, he removed $1,775.00 in personal property from the property in Lowell. The Probate Court found after an evidentiary hearing that the property removed was owned by the Defendant's mother and was an asset of the guardianship estate. (Plaintiff's Ex. 3, at 5.) The Probate Court ordered that the Defendant either: (1) return the property; (2) pay the guardianship estate $1,775.00; or (3) subject any remaining equity he had in the Lowell property to the right of the guardianship estate to recover, which right would constitute a judicial lien on the proceeds pending restitution in full. (Plaintiff's Ex. 3, at 5.)

As previously noted, defalcation has been defined as "a failure to observe clear and specific restrictions and limitations upon the fiduciary in either the trust document or the applicable statutory law." *Misiaszek,* 162 B.R. at 82. The March 6, 1991, Probate Court Decree provides that without prior written court approval the co-guardian "[s]hall not make any gift of any property or assets of the ward" and "[s]hall not sell, mortgage, pledge, lease, or exchange any property of the ward." (Plaintiff's Ex. 1, at 6.) While it is not clear from the evidence exactly what the Defendant did with the personal property after he removed it from the Lowell property, it is clear that it was not returned. Accordingly, the removal of the property was in violation of his duty under the Probate Court Decree. The debt of $1,775.00 was for defalcation while acting in a fiduciary capacity, and the debt is excepted from discharge pursuant to section 523(a)(4).

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.