**In re Judith A. MEIS, Debtor.**

**Robert C. MEIS, Plaintiff,**

**v.**

**Judith A. MEIS, Defendant.**

**Bankruptcy No. 94–31656.**
**Adversary No. 95–3081.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

June 27, 1996.

Mari Taoka, Toledo, OH, for Plaintiff.

Gordon Barry, Toledo, OH, for Defendant.

## OPINION AND ORDER EXCEPTING DEBT FROM DISCHARGE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court on Robert C. Meis's ("RCM") adversary complaint against Debtor Judith A. Meis ("Debtor") under § 523(a)(4). RCM, as assignee of the claim of his late mother Lavada A. Meis ("LAM"), seeks to recover from the Debtor based on her alleged misappropriation of funds from LAM. Having concluded that the Debtor embezzled $92,000.00 from LAM, the Court finds that the Debtor's debt to RCM, as assignee of LAM, should be excepted from discharge.

### FACTS

The Debtor filed a petition under chapter 13 of title 11 on July 11, 1994 (the "Petition Date") which case was subsequently converted to a case under chapter 7.

The Debtor and RCM were married in 1963 and divorced on February 25, 1993. **The Parties' Conduct With Regard to Certain Bank Accounts Prior to the Divorce**

The parties are in dispute as to whether the Debtor misappropriated approximately $92,000.00 from the late LAM prior to the date of the divorce. The Debtor argues that LAM gifted funds in excess of $184,000.00 (the "Funds") in two joint checking accounts with People's Savings Association and Society National Bank (the "Bank Accounts") to RCM and the Debtor in February, 1990. On the other hand, RCM argues that, although LAM transferred legal title of the Funds to RCM and the Debtor in 1990, LAM retained equitable title to the Funds.

The parties agree that LAM was dependent on them for a number of years prior to her death in 1993 because she suffered from arthritis and had difficulty walking. RCM delivered groceries for LAM. The Debtor assisted LAM in maintaining her residence. In more recent years, the Debtor assisted LAM with bathing and personal grooming. The parties also assisted LAM in her personal banking.

From 1980 through 1990, LAM designated the Debtor as her attorney-in-fact on certain bank accounts which she held jointly with RCM in order for the Debtor to handle certain banking transactions for her. Complaint, at p. 1, para. 4; *see* Answer at p. 1, para. 4.

Subsequently, LAM transferred title of the Funds, which totaled in excess of $180,000.00, to RCM and the Debtor in February, 1991. According to the Debtor, LAM had an unrestricted right to use the Funds when she needed them. Further, the Debtor testified that if LAM had asked her and RCM to transfer the Funds back into LAM's name, she would have done so.

RCM testified that he was required to ask LAM's permission prior to making withdrawals from the Bank Accounts. Further, the Debtor testified that she asked LAM's permission prior to making withdrawals from the Bank Accounts to purchase certain non-necessity items.

RCM testified that LAM placed the Funds in the names of RCM and the Debtor for LAM's convenience. According to the Debtor, one of LAM's expressed purposes in transferring the Funds to RCM and the Debtor was to avoid probate.

The Debtor admittedly withdrew approximately $92,000.00 from the Bank Accounts prior to the divorce in 1992. Answer, at p. 2, para. 7. The Debtor spent approximately $21,265.01 of the Funds which she had removed from the Bank Accounts prior to the divorce.

**Proceedings in Domestic Relations Court**

In his decision dated February 12, 1993 which granted RCL and the Debtor a divorce (the "Opinion"), the Honorable Donald Dodd ("Judge Dodd") of the Common Pleas Court of Lucas County, Ohio, Domestic Relations Division ("State Court") found "from the evidence that [LAM] placed her two savings accounts totalling $184,000.00 into the names of [RCM] and [the Debtor] in September of 1990." Opinion at p. 1, para. 6. Judge Dodd also found that RCM and the Debtor asked LAM's permission "if they desired to spend any of the [Funds] for their own use." Opinion, at p. 2, para. 6. In addition, Judge Dodd found that no gift tax return was filed by LAM when she transferred the Funds to the Debtor and RCM. Judge Dodd further found that the Funds were the property of LAM.

Judge Dodd found that the Debtor withdrew $92,000.00 from one of the Bank Accounts when she separated from RCM prior to the divorce.

In light of the above findings, Judge Dodd ordered the Debtor to transfer the remainder of the Funds which the Debtor had in her possession on the date of the Decree to LAM. Moreover, Judge Dodd ordered the Debtor to execute a note in favor of LAM for the difference between the $92,000.00 which she had originally removed from the Bank Accounts and the remainder of the Funds which the Debtor had in her possession on the date of the Decree.

Pursuant to the instructions of the State Court, RCM's counsel prepared a judgment entry (the "Decree") which was executed by Judge Dodd, the parties' respective counsel, and the parties themselves. The Decree states' that "[t]he various bank accounts in the name of [RCM] and [the Debtor] in the total approximate amount of $184,000.00 represent funds that [LAM] solely contributed to the accounts and represented funds of [LAM] on the date of the name change to [RCM] and [the Debtor]." Decree, at p. 2, para. 4. The Decree ordered the Debtor to transfer to LAM all funds remaining in her possession which were part of the $92,000.00 which she withdrew from the saving accounts when the parties separated. Decree, at p. 4,

para. 4. The Decree further ordered "that [the Debtor] shall immediately execute and deliver to [LAM], her promissory note for the difference between the amount of money still in her possession and the $92,000.00 which she withdrew, said note to bear interest at the rate of 3.5 percent per annum on the unpaid balance until said note is paid in full." Decree, at p. 4, para. 5.

## DISCUSSION
### APPLICABLE STATUTE

Section 523(a) of title 11 provides that:

[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny[.]

11 U.S.C. § 523(a)(4).

### BURDEN OF PROOF

■ RCM bears the burden of proof in this adversary by the preponderance of the evidence. *Kaye v. Rose (In re Rose),* 934 F.2d 901, 904 (7th Cir.1991) (citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). RCM also bears the burden of establishing that the requirements of collateral estoppel have been met. *Spilman v. Harley,* 656 F.2d 224, 229 (6th Cir. 1981).

### WHETHER THE FUNDS WERE LAM'S PROPERTY

*Whether the Debtor is Collaterally Estopped from Arguing That The Funds Were Not LAM's Property*

■ The Debtor is collaterally estopped by the Decree from arguing that the Funds were not LAM's property. *See Grogan,* 498 U.S. at 285 n. 11, 111 S.Ct. at 658 n. 11 (collateral estoppel applies in actions under § 523(a)).

"The bankruptcy court's otherwise broad powers do not include the power to reject a party's invocation of collateral estoppel on an issue fully and fairly litigated in another court." *Bugna v. McArthur (In re Bugna),* 33 F.3d 1054, 1058 (9th Cir.1994).

■ In accordance with 28 U.S.C. § 1738, this Court must apply Ohio's law of collateral estoppel. *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir.1995) (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 386, 105 S.Ct. 1327, 1334–35, 84 L.Ed.2d 274 (1985)).

> Under Ohio law,
>
> if an issue of fact or law actually is litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Hicks v. De La Cruz*, 52 Ohio St.2d 71, 369 N.E.2d 776, 777 (1977) (per curiam); *see also Goodson v. McDonough Power Equipment, Inc.*, 2 Ohio St.3d 193, 443 N.E.2d 978, 981 (1983) (describing collateral estoppel as "the preclusion of the relitigation in a second action of an issue or issues that have been actually and necessarily litigated and determined in a prior action") (citing *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969)).

The parties involved in the instant adversary are the same parties involved in the State Court action which terminated in a final judgment against the Debtor requiring the Debtor to return certain of the Funds to LAM. The issue of whether the Funds belonged to LAM is the same issue reached by Judge Dodd in the State Court action. This issue was fully litigated before Judge Dodd, who received both documentary and testimonial evidence prior to rendering the Opinion. Further, the issue of whether LAM owned the Funds was essential to Judge Dodd's decision. Therefore, the Court concludes that the Debtor is collaterally estopped from arguing that she was the owner of the Funds at the time that she removed certain of the Funds from one of the Bank Accounts.

The Debtor argues that the Decree is not entitled to preclusive effect in the instant adversary because Judge Dodd acted beyond his subject matter jurisdiction in ordering the Debtor to repay the Funds to LAM. The Court cannot agree with the Debtor that Judge Dodd acted plainly beyond his jurisdiction. *See Medovic v. Medovic*, unpublished, 1991 WL 191839 at *2–3, No. D–180018 (Ohio Ct.App. Sept. 26, 1991) (holding that domestic relations court did not err in finding that marital home, in which spouses were listed as tenants in common along with husband's mother, was not a marital asset and in awarding home to husband's mother); *cf. Lester Mobile Home Sales, Inc. v. Woods (In re Woods)*, 130 B.R. 204, 205–08 (W.D.Va. 1990) (concluding that order confirming chapter 13 plan could be given res judicata effect on the issue of bankruptcy court's subject matter jurisdiction because policy of finality of judgment outweighed individual party's interest in validity of judgment).

Furthermore, even if the Court were to review the issue de novo, the Court agrees with RCM that LAM owned the Funds at the time that the Debtor removed certain of the Funds from the Bank Accounts.

**WHETHER THE DEBTOR WAS A FIDUCIARY OF LAM AT THE TIME THAT SHE WITHDREW THE FUNDS FROM THE BANK ACCOUNTS**

■ RCM has failed to provide sufficient proof in support of his allegation that the Debtor was a fiduciary of LAM at the time that she withdrew certain of the Funds from one of the Bank Accounts. *See Hall v. Cooper (In re Cooper)*, 30 B.R. 484, 489–90 (9th Cir. BAP 1982) (concluding that debtor was not acting in fiduciary capacity when she withdrew funds from joint survivorship checking account established for grandmother's convenience); *Office of Public Guardian v. Messineo (In re Messineo)*, 192 B.R. 597, 599–600 (Bankr.D.N.H.1996) (concluding that debtor was not acting in a fiduciary capacity when he withdrew funds from joint bank account with mother); *Bast v. Johnson (In re Johnson)*, 174 B.R. 537, 541–42 (Bankr. W.D.Mo.1994) (held that debtor husband did not stand in fiduciary capacity to wife's aunt based on power of attorney which she had executed in his favor); *cf. Schaffer v. Dempster (In re Dempster)*, 182 B.R. 790, 801–02 (Bankr.N.D.Ill.1995) (held that debtor, who cohabited with and handled plaintiff's financial affairs, did not stand in a fiduciary capacity to plaintiff); *Farina v. Balzano (In re Balzano)*, 127 B.R. 524, 531–32 (Bankr.

E.D.N.Y.1991) (finding that debtor who maintained joint bank account with creditor did not have fiduciary relationship with creditor based on prior romantic relationship).

## WHETHER THE DEBTOR EMBEZZLED FUNDS FROM LAM

■ The Court nonetheless finds that the Debtor embezzled $92,000.00 from LAM. *See Skemp v. Michel (In re Michel),* 74 B.R. 88, 90–91 (N.D.Ohio 1986) (finding that debtor's debt to creditor for unexplained loss of funds to which debtor had sole access constituted an embezzlement); *see also Ball v. McDowell (In re McDowell),* 162 B.R. 136, 140 (Bankr.N.D.Ohio 1993) (stating that attorney's wrongful appropriation of client's settlement for his own use constituted an embezzlement). The Debtor intended to permanently deprive LAM of $92,000.00 when she removed the money from one of the Bank Accounts and transferred the money to her own account. Moreover, the Court finds incredible the Debtor's testimony that she viewed LAM's transfer of the Funds into the names of RCM and the Debtor as a gift. Rather, as in Judge Dodd's opinion, the Court concludes that the Debtor was well aware that she was required to seek LAM's permission prior to withdrawing $92,000.00 from the Bank Accounts. Furthermore, RCM testified that he was required to ask permission of LAM prior to making withdrawals from the Bank Accounts.

In light of the foregoing, it is therefore

ORDERED that the Debtor's debt to Robert C. Meis, as assignee of the late Lavada A. Meis, be, and it hereby is, excepted from discharge.