**In re Susan BEEMAN, Debtor.**

**William REILLY, Plaintiff,**

v.

**Susan BEEMAN, Defendant.**

**Bankruptcy No. 96–10896–MWV. Adv. No. 97–1019–MWV.**

United States Bankruptcy Court, D. New Hampshire.

Sept. 1, 1998.

Geraldine Karonis, Assistant U.S. Trustee, Manchester, NH, for J. Christopher Marshall.

Mark L. Janos, Law Office of Mark Janos, Newburyport, MA, for William Reilly.

J. Joseph McKittrick, McKittrick Law Offices, North Hampton, NH, for Helen McKittrick.

Jeffrey Schreiber, Schreiber & Associates, Danvers, MA, Trustee.

Denise Shore Shore, Dover, NH, for Susan Beeman.

### MEMORANDUM OPINION

MARK V. VAUGHN, Bankruptcy Judge.

The Court has before it the complaint of William Reilly ("Plaintiff") requesting that this Court except from discharge certain debts owed to him by the Debtor/Defendant Susan Beeman ("Defendant") under § 523(a)(2)(A) and (B), (a)(4) and (a)(6) of the Bankruptcy Code. In addition, both the Plaintiff and the Defendant have cross-claimed for attorneys' fees and costs. For the reasons set out below, the Plaintiff's complaint under § 523(a)(2)(A) and (B) and (a)(6) is denied, but granted with respect to § 523(a)(4). Further, both parties' cross-claims for attorneys' fees and costs are denied.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### FACTS

The following facts are undisputed. Mary M. Reilly was the Plaintiff's and Defendant's mother who passed away on September 17, 1994. The Defendant was her mother's primary caregiver, and Mary M. Reilly lived in the Defendant's home for the last year of her life. (*See* Pl.'s Ex. 25 at 98–99, lines 23–2.) [1] Mary M. Reilly's ("Settlor") estate included an irrevocable trust, the Irrevocable Trust of Mary M. Reilly ("Trust"), dated October 2, 1989. Paragraph three of the Trust states:

> In the sole and absolute discretion of the Trustee, to pay the net income to the Settlor or for the use and benefit of the Settlor during her life. In addition, in the sole and absolute discretion of the trustee, to invade the principal, if necessary, to provide for the Settlor's maintenance, support, health, or other benefit and to make payments directly to the Settlor or for the benefit of the Settlor.

(Pl.'s Ex. 1 ¶ 3 (internal capitalization omitted).[2]) At the time Mary M. Reilly executed her Trust, her entire estate was worth approximately $50,000. From 1989 to 1994, Mary M. Reilly received between $540 to $653 in monthly income from social security payments. The Defendant used these monies to care for her mother; when Mary M. Reilly passed away in September 1994, the Trust held $10,366.65. At the time of trial, October 8, 1997, the Trust held $3,888.41, but no distributions to the beneficiaries had been made.

The Defendant is the executrix of the Estate of Mary M. Reilly and the trustee of the Trust. (*See* Pl.'s Ex. 2 at 9; Pl.'s Ex. 1 ¶ 11.) The Defendant and the Plaintiff, who are brother and sister, are two of the named beneficiaries of the Trust. (*See* Pl.'s Ex. 1.)

The Defendant filed her Chapter 7 petition on April 9, 1996. The Plaintiff was not listed as a creditor on her petition. On August 8, 1996, the Defendant received her discharge and on September 4, 1996, her case was closed. On October 31, 1996, approximately two years after Mary M. Reilly passed away, the Plaintiff requested a formal audit of both the Trust and his mother's estate. On December 17, 1996, the Defendant moved to reopen her bankruptcy case to add the Plaintiff as a creditor on Schedule F and amend Schedule B to list $1,300, instead of $725, as an interest in her mother's estate. (*See* Pl.'s Ex. 25 at 13, lines 16–19.) The Court granted the motion to reopen.

A 2004 examination of the Defendant was held on March 3, 1997, at which time the

---

**1.** The Plaintiff's Exhibit 25 is the 2004 deposition of the Defendant on March 3, 1997.

**2.** The Plaintiff's Exhibit 1 is identical to the Defendant's Exhibit 101.

Defendant admitted, among other things, the following: she waited over two years before probating her mother's estate; she paid estate debts from the Trust; she did not list her interest in her mother's estate or the Trust when she filed bankruptcy; she did not seek reimbursement from Medicare or Medicaid when she paid herself in 1994 from the Trust for serving as caregiver to her mother; she loaned herself money from the Trust which remained unpaid without interest; and that she, as trustee, failed to distribute the Trust monies upon her mother's death. (*See* Pl.'s Ex. 25.)

The Plaintiff filed a complaint on March 14, 1997, and a trial was held on October 8, 1997. Both the Plaintiff and the Defendant submitted as evidence a chart detailing the dates, check numbers, descriptions and amounts of the various misappropriations at issue, the sum of which totals $23,879.16. (*See* Def.'s Ex. 111; Pl.'s Ex. 13.)

## DISCUSSION

### I. *Section 523(a)(4).*

The Plaintiff alleges that his share of the Trust should be excepted from the Defendant's discharge pursuant to § 523(a)(4) of the Bankruptcy Code. Pursuant to § 523(a)(4), the Plaintiff, to prevail, must prove by a preponderance of the evidence, *Office of Public Guardian v. Messineo (In re Messineo)*, 192 B.R. 597, 599 (Bankr.D.N.H. 1996), that the Defendant committed "fraud or defalcation while acting in a fiduciary capacity, [or committed] embezzlement, or larceny." 11 U.S.C. § 523(a)(4) (1988 & Supp. 1998).

▮ First, it is clear that the Defendant was a fiduciary pursuant to § 523(a)(4). The Defendant acknowledged at trial that she was indeed the trustee of her mother's Trust, and introduced the Trust document into evidence. (*See* Pl.'s Ex. 1.) "[T]echnical trusts, not implied trusts, are those that lead to a nondischargeable debt." *Office of Public Guardian*, 192 B.R. at 599 (citing *BAMCO 18 v. Reeves (In re Reeves)*, 124 B.R. 5, 7 (Bankr.D.N.H.1990)). "[S]ection 524(a)(4) is aimed only at the express trust situation in which the Defendant either expressly signi-

fied his intention or was clearly put on notice that he was undertaking the special responsibilities of a trustee to account for his actions." *Office of Public Guardian*, 192 B.R. at 600 (citations omitted). The Trust document is sufficient to establish an express trust. Thus, the Defendant is a "fiduciary" for the purposes of § 523(a)(4). *See Office of Public Guardian*, 192 B.R. at 599 ("The term fiduciary in the Bankruptcy Code is narrower than the word as used under state law.") (internal citations and quotations omitted).

▮ In order for this Court to find a defalcation, the Plaintiff must "simply prov[e] that a fiduciary failed to return property or account for same, even though no fraud, embezzlement, or even misappropriation on the part of the fiduciary is shown." *BAMCO 18 v. Reeves (In re Reeves)*, 124 B.R. 5, 6 (Bankr.D.N.H.1990) (internal citations omitted) ("*Reeves*"). Further, defalcation is defined as "a failure to observe clear and specific restrictions and limitation upon the fiduciary in either the trust document or the applicable statutory law and does not require as an element therefore some sort of bad faith on the part of the fiduciary .... [Defalcation also] includes innocent as well as intentional or negligent default so as to reach the conduct of all fiduciaries who are short in their accounts." *Peerless Ins. Co. v. Misiaszek (In re Misiaszek)*, 162 B.R. 80, 82 (Bankr.D.N.H.1993); *Office of Public Guardian*, 192 B.R. at 601 ("Defalcation has been defined as a failure to observe clear and specific restrictions and limitations upon the fiduciary in either the trust document or the applicable statutory law.") (internal citations and quotations omitted); *Ducey v. Doherty (In re Ducey)*, 160 B.R. 465, 468 (Bankr. D.N.H.1993) ("In short, 'innocent' conduct can constitute defalcation."); *see also Lynch v. Brunero (In re Brunero)*, 223 B.R. 263, 264–65 (Bankr.D.R.I.1998) ("Defalcation has a broader application than fraud and may cover cases even where the default is innocent.") (citations omitted); *Boudakian v. Boudakian (In re Boudakian)*, 137 B.R. 89, 94 (Bankr.D.R.I.1992) ("A defalcation may exist where even the merest deficit is caused by the debtor's misconduct, even if the debtor's conduct does not benefit him....") (cit-

ing *Lee v. Crosswhite (In re Crosswhite),* 91 B.R. 156, 160 (Bankr.M.D.Fla.1988)).

I find the Plaintiff has established by a preponderance of the evidence that the Defendant, a fiduciary, committed a defalcation in failing to remit the Trust proceeds to the Plaintiff and by unilaterally taking Trust monies as personal loans. First, the Trust does not authorize personal loans from the Trust monies,[3] but the Defendant, as a fiduciary, loaned herself money from the Trust, which, at the time of trial, remained unpaid. These monies were used as pure personal loans, to pay taxes, and to make various home improvements, discussed below. Also, the Defendant closed her mother's credit card accounts with Trust monies—she paid approximately $5,700 to Discover ($1,500.26), GM ($3,090.74),[4] J.C. Penney's ($305.65) and Sears ($617.58). (*See* Pl.'s Ex. 25 at 118; Pl.'s Ex. 2 (directing that Mary M. Reilly's debts be paid from the probate of her estate); Pl.'s Ex. 11 (listing $6,254.70 in checks, payable in "cash" that the Defendant wrote to herself as loans from the Trust).) *See also* N.H. REV. STAT. ANN. § 554:19 (1997) ("All debts due the estate, which by due diligence might have been collected, shall be accounted for in money.").

Further, the Defendant testified at her 2004 meeting that she still owed $50 from the $944 she borrowed to pay American Remodeling to install windows on her home. (*See* Pl.'s Ex. 25 at 113, lines 6–16.) The Defendant testified also that the Trust "probably" did not give her the authority to take personal loans from it, but that her mother did; in addition, because her mother did not want her to, she never paid interest on those loans. (*See* Pl.'s Ex. 25 at 113, lines 20–23.)

Second, the Defendant did not file for administration of the estate and never advised the beneficiaries of the Trust until more than two years after Mary Reilly passed away. The Plaintiff filed for administration on November 18, 1996. (*See* Pl.'s Ex. 25 at 26, line 12.) *See also* N.H. REV. STAT. ANN. § 552:3 (1997) ("The person named as executor of a will shall, within thirty days after the decease of the testator ... cause the will to be proved ...."). The Plaintiff discovered the Trust through his own inquiry. Yet, the Defendant testified she was aware there were beneficiaries of the Trust, and that the assets were to be distributed to those beneficiaries. In addition, the Defendant testified that when her mother died the Trust held $10,366.65; at the time of trial, the Trust contained $3,888.41, and no distribution to the beneficiaries had been made either of these monies or of property under the will which the Defendant still held in storage. (*See* Pl.'s Ex. 1 ¶ 3 (directing the Defendant herein to distribute the Trust proceeds to the beneficiaries upon the Settlor's death); Pl.'s Ex. 2 at 1 (directing that all debts be paid out of the decedent's estate "as soon as practicable").) Also, the Defendant testified at trial and at her deposition that she did not file any tax returns for the trust or estate. (*See* Pl.'s Ex. 25 at 59, lines 1–2.)

■ However, the Court does not find that the monies the Defendant paid herself as caregiver constitute a defalcation under § 523(a)(4). The Trust explicitly states that the monies are to be used for Mary M. Reilly's health. (*See* Pl.'s Ex. 1.) The cost to place the Plaintiff's and Defendant's mother in a nursing home would have been much greater than what the Defendant charged for her services. The Defendant paid herself $6.25/hour for forty hours a week, and Area Homemakers paid her for twenty hours a week.[5] However, the Defendant testified that she worked, at times, as much as 102 hours per week caring for her mother when she required around-the-clock care.

---

3. The Trust authorized the Defendant herein to "borrow money from any source and for any purpose, including but not limited to the payment of taxes, and to pledge or mortgage any assets of the Trust as security for money borrowed." (Pl.'s Ex. 1 ¶ 4F (internal capitalization omitted).)

4. The Defendant also had a GM credit card, but testified that she never used Trust monies to pay

on her GM debt. (*See* Pl.'s Ex. 25 at 96, lines 10–13.)

5. In total, the Defendant paid herself, according to her testimony, approximately $9,250 for caring for her mother from January until September 1994. (*Cf.* Pl.'s Ex. 25 at 107, lines 7–9 (the Defendant testified she received $9,000).)

The Plaintiff further alleges that two of the Defendant's actions constitute a defalcation: the Defendant made certain home improvements and sold her mother's mobile home, which was in the Trust. The Court disagrees. With regard to the mobile home, the Defendant testified that her mother put the home into the trust to protect it in the event she had to enter a nursing home. (*See* Pl.'s Ex. 1, Schedule A (adding the mobile home to the Trust).) The evidence shows only that her mother purchased the home in 1989 for approximately $57,000, and that it was sold in 1994 for $24,500.[6] (*See* Pl.'s Ex. 25 at 132, lines 6–8.) The Plaintiff, who did not introduce any evidence of value at the time of sale, has failed to prove that the Defendant committed a defalcation selling the home or that the sale garnered less than what the Defendant averred was its reasonable value at the time. Barbara Bowen, the manager of the trailer park, testified that she assisted in selling the home and that $25,000 was "normal for the area." She also testified there were water and septic problems in the mobile home park.

With regard to the home improvements, the Defendant installed a $300 air conditioner approximately one month before her mother passed away and added a porch valued at approximately $5,831.50. The Defendant testified that these improvements were made at her mother's insistence—that her mother requested the porch improvements because she would sit there from two to three hours a day, and also the air conditioner because she had trouble breathing in the living room. The Plaintiff cannot prove a defalcation simply by introducing this unopposed evidence. In this "he said/she said" context, the Court finds that the Plaintiff has not proved by a preponderance of the evidence that these improvements and additions were not at his mother's request and for her health.

Finally, the Defendant testified that she was not aware what her duties as a fiduciary were, and that she was never told that her duties as a trustee encompassed protecting the beneficiaries' interests in the Trust money. The Court finds this argument without merit. First, the Defendant admitted at trial that she knew there were beneficiaries and that the assets were to be distributed to those beneficiaries. *See Ducey,* 160 B.R. at 470 (That the defendant "was on notice that he was placing himself into a fiduciary capacity" was sufficient to establish a fiduciary relationship.). Second, David Beeman, her then-husband,[7] testified that he accompanied the Defendant on several consultations regarding the Trust, and that the Defendant was given advice by Attorney Helen McKittrick, the estate lawyer, regarding her fiduciary responsibilities, primarily that the Defendant was to obtain a tax identification number and use the money mainly for medical purposes. (*See* Pl.'s Ex. 25 at 139 (The Defendant testified she obtained a tax identification number, but "had absolutely no idea about what to do.").) Finally, defalcation does not have to include bad faith, but may merely be a "failure to observe clear and specific restrictions" under the trust document. *Peerless Ins. Co.,* 162 B.R. at 82. Thus, for all the above-mentioned reasons, the Court finds that the Defendant's debt is excepted from discharge under § 523(a)(4).

## II. Sections 523(a)(2)(A) and (B) and (a)(6).

Count II of the complaint alleges that the debt to the Plaintiff should be excepted from discharge under § 523(a)(2)(A) and (B) and (a)(6) of the Bankruptcy Code. For the reasons that follow, the Court denies the Plaintiff's complaint under this count.

### A. Section 523(a)(6).

In his Memorandum of Law filed September 29, 1997, the Plaintiff states that the Defendant "made false representations in her petition to the Bankruptcy Court so as to avoid payment of sums due the Plaintiff, as evidenced by her initial undervaluation of her interest in her mother's estate and her failure to disclose a number of other assets, including those of her business." (Def.'s Mem. of Law at 2.) Section 523(a)(6) states

---

6. Only the mobile home was sold—the property was rented.

7. The parties were in the process of obtaining a divorce.

that "a discharge under section 727 . . . does not discharge an individual debtor from any debt—for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (1988 & Supp.1998). The Plaintiff, in order to prevail under this section, must prove by a preponderance of the evidence that the Defendant not only intended to act or acted willfully and maliciously, but that she *intended to harm* the Plaintiff. *See Kawaauhau v. Geiger,* —— U.S. ——, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998) ("The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.").

The Plaintiff has not met his burden of proof with respect to this section. Although the Defendant's decision not to probate the estate immediately upon her mother's passing may have been willful, the Plaintiff has not shown that the Defendant acted with malice or any specific intent to injure the Plaintiff. The Debtor/Defendant's motion to reopen was granted on the basis of an unintentional failure to list the Plaintiff as a creditor. Further, the Defendant's testimony at trial does not convince this Court that she acted with any malice or willful intent to injure the Plaintiff in failing to list him as a creditor or in failing to probate the estate and administer the Trust assets. The Defendant testified that she was under a great deal of stress: the break-up of her marriage was imminent and her mother had recently passed away. The Court thus denies the Plaintiff's complaint under § 523(a)(6).

B. *Section 523(a)(2)(A) and (B).*

■ Section 523(a)(2)(A) and (B) of the Bankruptcy Code provides:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or · published with intent to deceive

. . . .

11 U.S.C. § 523(a)(2)(A) and (B) (1988 & Supp.1998). The reliance standard under sub-section (a)(2)(A) is justifiable reliance. *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (Justification turns on the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than a mere application of a community standards of conduct to all cases.).

■ The First Circuit provided a detailed analysis of § 523(a)(2)(A) in *Palmacci v. Umpierrez,* 121 F.3d 781 (1st Cir.1997). In *Palmacci,* the First Circuit summarized the elements of § 523(a)(2)(A), and held that the Plaintiff must prove by a preponderance of the evidence that:

(1) the Defendant made a representation;

(2) at the time the representation was made, the Defendant knew or should have known it was false;

(3) the Plaintiff justifiably relied on the representation; and

(4) the Plaintiff suffered damages.

*Palmacci,* 121 F.3d at 786. Further, an intent to defraud may be proven by a totality of the circumstances. *Id.* at 788.

There is insufficient evidence to support the Plaintiff's complaint under § 523(a)(2)(A) or (B). First, the Plaintiff cannot claim any reliance, justifiable or reasonable, until October 31, 1996, when he first became aware that the Defendant did not distribute the Trust assets. Second, there is insufficient evidence to prove that, with a view to the totality of the circumstances, the Defendant made representations to the Plaintiff regard-

ing the disposition of Trust assets, whereby she knew or should have known those representations were false. The Defendant reopened her bankruptcy case December 16, 1996 to add the Plaintiff as a creditor, little more than one month after the Plaintiff inquired into the status of the Trust. Further, there was little to no evidence of any specific representations, oral or written, made by the Defendant to the Plaintiff at that time. Thus, the Plaintiff's complaint under § 523(a)(2)(A) and (B) is denied.

### III. *Damages.*

The Plaintiff and Defendant have introduced exhibits pertaining to the amounts which the Defendant misappropriated. (*See* Pl.'s Exs. 11, 13; Def.'s Exs. 111, 102.) Neither these exhibits nor the Plaintiff's complaint specifically alleges the amount that should be excepted from discharge. Thus, the Court has had to ascertain the reasonable amount of damages the Plaintiff is due pursuant to the Defendant's defalcation. This amount does not include the monies the Defendant used to buy an air conditioner ($300) or to improve her porch ($5,831.50), which totals $6,131.50.

Thus, from the Defendant's and Plaintiff's Exhibits 111 and 13, which are identical, the Court subtracts the net amount of $6,131.50 from the amount listed as the total amount the Defendant misappropriated, $21,373.95, for a total of $15,242.45. From that sum, the Court adds 6.5% interest for two years, ten months and 22 days,[8] which totals $2,865.77.[9] To that amount, the Court adds the amount of the money in the Trust at the time of trial, $3,888.41, and $2,557.32, which is the amount, including interest, that the Plaintiff avers is the outstanding total missing from the Trust from the Defendant's personal loans. Finally, the Court divided the total of these amounts by three, which represents the Defendant's one-third interest in his mother's Trust. The chart below summarizes the Court's calculations:

| | |
|---|---|
| Total amount the Defendant misappropriated: | $21,373.95 |
| Minus the monies spent on the air conditioner and porch: | -$ 300.00 |
| | -$ 5,831.50 |
| *Total:* | *$15,242.45* |
| Add 6.5 % interest for 34 months and 22 days: | $ 2,865.77 |
| Equals: | $18,108.22 |
| Plus the balance in the Trust: | $ 3,888.41 |
| Plus the monies (+ interest) the Defendant loaned herself: | $ 2,557.32 |
| Total: | $24,553.95 |
| Divided by the Defendant's 1/3 interest: | / 3 |
| Total: | $ 8,184.65 |

Thus, the Court excepts $8,184.65 from the Defendant's discharge pursuant to § 523(a)(4) of the Bankruptcy Code. The Court notes that it used the best available evidence that was submitted to achieve a fair result for both parties.

Finally, both parties have requested reasonable attorneys' fees and costs, which the Court denies: neither position taken by the Plaintiff and Defendant was frivolous or without merit.

Therefore, for all of the foregoing reasons, the Plaintiff's complaint is granted under § 523(a)(4) and denied under § 523(a)(2)(A) and (B) and (a)(6) of the Bankruptcy Code. This opinion constitutes the Court's findings of facts and conclusions of law in accordance with Federal Rule of Procedure 7052. The Court will issue a final judgment consistent with this opinion.

---

**8.** The interest begins on November 15, 1994 and ends on October 7, 1997. November 15, 1994 to November 15, 1996 is twenty-four months; November 15, 1996 to September 15, 1997 is ten months; and September 15, 1997 to October 7, 1997 is twenty-two days.

Twenty-two days is also .71 months, using a thirty-one day month. Thus, the total number of months is 34.71, or, divided by 12 (one year), 2.8925 years.

**9.** The Court multiplied $15,242.45 by 6.5%, which totaled $990.76. The Court then multiplied $990.76 by 2.8925, which totaled $2,865.77.